UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | Criminal Action No. 22-60 (BAH) |
| v. | Chief Judge Beryl A. Howell |
| VINCENT GILLESPIE, | |
| Defendant. | |

### MEMORANDUM AND ORDER

Defendant Vincent Gillespie faces trial on December 19, 2022, on an eight-count indictment and has moved pretrial to transfer venue to the District of Massachusetts, or alternatively, "to any district other than the District of Columbia and its immediately neighboring districts." Def.'s Mot. Transfer Venue ("Def.'s Mot.") at 1, ECF No. 30. According to defendant, he cannot obtain a fair and impartial trial related to the events of January 6, 2021, in the District of Columbia. For the reasons discussed below, and consistent with this Court's previous disposition of virtually identical arguments by other defendants facing charges for offense conduct at the U.S. Capitol on January 6, 2021, the motion is denied.

I.   DISCUSSION

The right to an impartial jury is constitutionally enshrined by the Fifth and Sixth Amendments, but its primary safeguard is in the *voir dire* process. *See United States v. Haldeman*, 559 F.2d 31, 63 (D.C. Cir. 1976) (en banc). In this Circuit, "well established procedure" is to deny pre-*voir dire* requests for a change of venue; only once the *voir dire* process reveals that an impartial jury cannot be selected should a change of venue occur. *Id.* at 60–64. In extreme cases of "extraordinary local prejudice," however, juror prejudice should be presumed. *United States v. Skilling*, 561 U.S. 358, 378–81 (2010). *Skilling* guides courts to

1

consider three factors in determining whether this presumption should attach: (1) "the size and characteristics of the community in which the crime occurred," (2) the presence of "blatantly prejudicial information" in news stories available to jurors, and (3) the time elapsed between the alleged crime and trial. *Id.* at 382–83. Contrary to defendant's arguments, and much like in *Skilling* itself, none of these factors weighs in favor of transferring venue.

As to the first *Skilling* factor—the size and characteristics of the District of Columbia—Gillespie's arguments about the nature of D.C. residents fail to establish that a fair jury cannot be found in the District. Def.'s Mot. at 4–11. Defendant first posits that too many D.C. residents are "closely connected to the federal government" because they work for the federal government or law enforcement groups, or because they know someone who does. *Id.* at 5–6. Federal employees, the motion contends, were uniquely affected by the attack on the Capitol because "[t]he government has characterized the events of January 6 as an attack on our elections, government institutions generally, and democracy as a whole," rendering "District of Columbia residents closely connected to the government [] more likely to view themselves as the direct victims of the events." *Id*. at 6. Under this logic, however, virtually no district would satisfy Gillespie: the direct victims of an attack on "democracy as a whole" comprises the entire American polity. *See Haldeman*, 559 F.2d at 64 n.43 ("Scandal at the highest levels of the federal government is simply not a local crime of peculiar interest to the residents of the District of Columbia.").[1]

Gillespie next argues that D.C. residents were "deeply traumatized" by the attack on the Capitol and its aftermath, including the city-wide curfew, enhanced law enforcement presence,

---

[1] The same is true to defeat defendant's argument that D.C. residents' fear of "another January 6 . . . rais[es] a concern about punishing for propensity." Def.'s Mot. at 9. Residents of any federal district would share this same fear, and, at trial, Gillespie may raise relevance and undue prejudice concerns under Federal Rules of Evidence 403 and 404.

2

and state of emergency. Def.'s Mot. at 6–8. To be sure, the immediate local impact on D.C. residents was undoubtedly substantial—but this fact alone is insufficient to necessitate transfer. Courts have declined to transfer venue in cases involving far more visceral local effects. *See, e.g.*, *In re Tsarnaev*, 780 F.3d 14, 16 (1st Cir. 2015) (upholding district court's denial of venue transfer in prosecution of Boston Marathon bomber, whose actions killed three, injured hundreds, and resulted in a shelter-in-place order); *United States v. Yousef*, 327 F.3d 56, 155 (2d Cir. 2003) (upholding denial of venue transfer in prosecution of 1993 World Trade Center bomber, whose actions killed six and injured thousands). Moreover, only limited areas of the District of Columbia in the immediate vicinity of the U.S. Capitol were subjected to enhanced law enforcement presence, and all the most visible security steps necessitated by the January 6, 2021, attack on the Capitol have long since disappeared.

Nor do the voting patterns of D.C. residents give rise to a presumption of prejudice in this case. *See* Def.'s Mot. at 8–9. The D.C. Circuit, sitting *en banc*, has already rejected the argument that D.C. residents are incapable of fairness in very politically charged criminal prosecutions. *Haldeman*, 559 F.2d at 64 n.43. Biden voters will constitute a substantial share of any jury pool, even outside of this District—after all, President Biden prevailed in the 2020 presidential election, garnering over 7 million more votes than his opponent. *See* FED. ELECTION COMM'N, OFFICIAL 2020 PRESIDENTIAL GENERAL ELECTION RESULTS 2, 8 (2020), https://www.fec.gov/resources/cms-content/documents/2020presgeresults.pdf.

Defendant next suggests that a poll commissioned by the District of Columbia Federal Public Defender ("FPD") involving 400 potential D.C. and Atlanta jurors, respectively, "confirms [that] significant majorities of potential jurors in the District of Columbia share materially prejudiced views of January 6 defendants." Def.'s Mot. at 10–11; *see also* Def.'s Mot., Ex. 1, FPD Poll Analysis (Feb. 4, 2022) ("FPD Letter"), ECF No. 30-1. Gillespie notes, for example,

3

that the FPD survey found that 84% of those potential D.C. jurors polled expressed "unfavorable opinions about those arrested for participating in the January 6 demonstrations, 62% would characterize these individuals as criminals," approximately one-third stated that they themselves would not receive a fair trial if they were defendants in a January 6 case, and 72% believe that January 6 defendants "were trying to overthrow the US government." *Id*. at 10. As other Judges on this Court have already written, however, the FPD survey's questions used "impossibly broad language," without giving respondents the "option to share that they had not yet formed an opinion as to the guilt of every January 6th defendant." *United States v. Brock*, Case No. 21-140 (JDB), 2022 WL 3910549, *7 (D.D.C. Aug. 31, 2022). The fact that, when confronted with the question of how the respondent was likely to vote "on a jury for a defendant charged with crimes for his or her activities on January 6th," a full one-third of respondents declined to adopt either of the two responses offered—"Guilty" or "Not Guilty"—and instead *volunteered* the answer "Depends," speaks to the survey's design discouraging fair answers. *See* FPD Letter at 7.

      The inherent flaws in the FPD survey make this a shaky basis to diverge from settled practice. In any event, this Court has previously "declined to use surveys and polls as a reason to *ex ante* presume prejudice that *voir dire* cannot repair." *See* Pretrial Conference Tr. at 65, *United States v. Williams*, Case No. 21-377 (BAH), ECF No. 118 (D.D.C. Aug. 14, 2022) (citing *Haldeman*, 559 F.2d at 64 n.43); *see also Haldeman*, 559 F.2d at 64 n.43 (holding that the trial court was entitled to rely "less heavily on a poll taken in private by private pollsters and paid for by one side than on a recorded, comprehensive voir dire examination conducted by the judge in the presence of all parties and their counsel pursuant to procedures, practices and principles developed by the common law since the reign of Henry II"). This Court joins with previous decisions issued by Judges of this Court to hold that community-attitude surveys such as the ones referenced by Gillespie here do not evidence, let alone establish, a presumption of prejudice.

4

*See, e.g.*, *United States v. Nassif*, Case No. 21-421 (JDB), 2022 WL 4130841, *9–*10 (D.D.C. Sept. 12, 2022); *Brock,* 2022 WL 3910549 at *5–*8; *United States v. Garcia*, No. 21-0129 (ABJ), 2022 WL 2904352, at *11–*15 (D.D.C. July 22, 2022).  In all, none of Gillespie's arguments support a finding of presumed prejudice based on the District of Columbia's size and characteristics.

As to the second *Skilling* factor—pretrial publicity—the extensive nature of local media coverage of the events of January 6, 2021, and their aftermath does not necessitate transfer. Gillespie portrays the District of Columbia as "a city still feeling the impacts of January 6" through "both national and local" pretrial publicity—citing "sensational" reporting, such as "the repeated showing of select snippets of photographic and video footage," and coverage of police officers testifying before Congress about their experiences on that day—that "has only served to enhance and sustain the effects and by extension, sentiments about the participants."  Def.'s Mot. at 12–13.  The mere fact of extensive and even hostile coverage is not sufficient to presume prejudice:  "In these days of swift, widespread and diverse methods of communication, an important case can be expected to arouse the interest of the public in the vicinity, and scarcely any of those best qualified to serve as jurors will not have formed some impression or opinion as to the merits of the case," and presuming these jurors' prejudice would create an "impossible standard."  *Haldeman*, 559 F.2d at 60 (quoting *Irvin v. Dowd*, 366 U.S. 717, 722–23 (1961)). *Accord Murphy v. Florida*, 421 U.S. 794, 800–01 (1975) (holding that extensive press coverage about a defendant's previous trials and convictions did not corrupt the fairness of the jurors).

More importantly, defendant acknowledges that "some in the jury pool may not have heard of Gillespie specifically."  Def's Mot. at 15.  Defendant has not pointed to any specific news report to indicate that jurors would recognize him from coverage of January 6, 2021, and

*voir dire* will draw out whether jurors have seen any media reports about him specifically. Gillespie's absence from recent publicity stands in stark contrast with the "foundation precedent" for this question, *Rideau v. Louisiana*, 373 U.S. 723 (1963), which involved news stories with "blatantly prejudicial information," namely, a televised in-custody confession by the defendant to the crimes for which he would be tried. *Skilling*, 561 U.S. at 379, 382. The Supreme Court held that the broadcast at issue in that case "in a very real sense was Rideau's trial—at which he pleaded guilty to murder." *Rideau*, 373 U.S. at 726. Here, by contrast, the public is unlikely to even recognize Gillespie.

Indeed, recent media coverage of the attack on the Capitol may even be *helpful* to this defendant. The U.S. House of Representatives' Select Committee to Investigate the January 6th Attack on the United States Capitol has held several hearings over this past year. These hearings and ensuing media coverage have shifted media focus from the rioters to the actions of high-level officials. Rather than containing a "confession or other blatantly prejudicial information" about defendant, *Skilling*, 561 U.S. at 382, recent local and national news coverage about the attack on the Capitol has concerned the responsibility of persons other than this defendant.[2]

The final *Skilling* factor—the elapsed time between the charged conduct and the trial—also weighs against defendant. Nearly two years after the attack on the Capitol, the curfew and

---

[2] Similar logic applies to undermine Gillespie's argument that statements made by this Court, and later reported by the media, support prejudice. The article to which defendant cites, *see* Def.'s Mot. at 15 & n.29 (citing Kyle Cheney and Josh Gerstein, *'Almost schizophrenic': Judge rips DOJ approach to Jan. 6 prosecutions*, POLITICO (Oct. 28, 2021), https://www.politico.com/news/2021/10/28/almost-schizophrenic-judge-rips-doj-approach-to-jan-6-prosecutions-517442), references the Court's observation about the government's "scorching rhetoric" used to describe the seriousness of the attack on the U.S. Capitol in a case where prosecutors charged merely a petty offense, Class B misdemeanor and described those who entered the Capitol building as "mere trespassers." *Id.* This critique of the *government*'s approach in litigating January 6-related cases was focused on *government* conduct without mentioning any defendant in particular, further shielding Gillespie and those similarly situated from any prejudicial sentiment by prospective jurors. *Voir dire* is also available to ensure the selection of only jurors with an unencumbered ability to decide issues before them, regardless of media reporting or statements made by the president, any member of Congress, or Judges in this Court or any other.

state of emergency have long since lifted; residents have resumed their daily lives, if they ever paused them; the National Mall has returned to its role as the host of kickball league competitions rather than barricades and police. The First Circuit held that two years after the Boston Marathon Bombings was sufficient for the "decibel level of publicity about the crimes themselves to drop and community passions to diminish." *Tsarnaev*, 780 F.3d at 22. So too here: any jurors who carry the memory of January 6 particularly heavily such that he or she cannot be fair to the Gillespie can be ferreted out in *voir dire*.

Judges on this Court have consistently rejected arguments similar to that of defendant. *See, e.g.*, *United States v. Bender*, No. 21-508, Memorandum & Order, ECF No. 78 (D.D.C. Nov. 22, 2022) (denying Def.'s Mot. Change Venue, ECF No. 49) (Howell, C.J.); *United States v. Ballenger*, No. 21-719, 2022 WL 16533872 (D.D.C. Oct. 28, 2022) (Boasberg, J.); *United States v. Eicher*, No. 22-38, 2022 WL 11737926 (D.D.C. Oct. 20, 2022) (Kollar-Kotelly, J.); *United States v. Nassif*, No. 21-421, 2022 WL 4130841, *8–*11 (D.D.C. Sept. 12, 2022) (Bates, J.); *United States v. Herrera*, No. 21-619, Memorandum & Order, ECF No. 54 (D.D.C. Aug. 4, 2022) (denying Def.'s Mot. Change Venue, ECF No. 36) (Howell, C.J.); *United States v. Bledsoe*, No. 21-204, Min. Order (D.D.C. July 15, 2022) (denying Def.'s Mot. Change Venue, ECF No. 190) (Howell, C.J.); *United States v. Bochene*, 579 F. Supp. 3d 177 (D.D.C. 2022) (Moss, J.); *United States v. Garcia*, No. 21-129, 2022 WL 2904352 (D.D.C. July 22, 2022) (Berman Jackson, J.); *United States v. Rhodes*, No. 22-15, 2022 WL 2315554 (D.D.C. June 28, 2022) (Mehta, J.); *United States v. Williams*, No. 21-377, Min. Order (D.D.C. June 10, 2022) (denying Def.'s Mot. Change Venue, ECF No. 40) (Howell, C.J.). Gillespie acknowledges that a brick wall of decisions by this Court has already rejected his arguments, *see* Def.'s Reply in Support of Mot. Transfer Venue at 7, ECF No. 38, and makes no effort whatsoever to address or

show any deficiency in the reasoning in any of the other decisions issued by this Judge and every other Judge on this Court denying venue transfer motions. Those decisions remain persuasive and thus defendant's motion to transfer venue is denied.

## II.     ORDER

For the foregoing reasons, it is hereby

**ORDERED** that defendant's Motion to Change Venue, ECF No. 30, is **DENIED.**

**SO ORDERED.**

Date: November 29, 2022

_____
BERYL A. HOWELL
Chief Judge