UNITED STATES DISTRICT COURT

DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 22-00060-BAH |
| | ) | |
| VINCENT GILLESPIE | ) | |

**RESPONSE TO THE GOVERNMENT'S SENTENCING MEMORANDUM**

The government asks the Court to impose a sentence for Vincent Gillespie – 87 months - that would place him in the pantheon of the worst of the worst January 6 defendants. Scrutiny of its sentencing guideline calculation, as well as sentencing decisions in January 6 cases thus far, demonstrate the absurdity of such a recommendation. For the reasons that follow, Mr. Gillespie reiterates his contention that a sentence of thirty (30) months' imprisonment is not only "sufficient, but not greater than necessary" to achieve section 3553(a)'s sentencing goals but also properly implements Congress's directive to "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a).

**I.      INTRODUCTION**

The disputed sentencing cross-reference and enhancements are briefed in Mr. Gillespie's objections to the Presentence Report and his Sentencing Memorandum. Consequently, this Response will be limited to addressing a few specific points posited by the government in its Sentencing Memorandum [D.E. 81]. The remainder of this Response will focus on the Court's task in fashioning a sentence that is sufficient, but not greater than necessary, to achieve the goals of 18 U.S.C. § 3553(a) with particular focus on the need to avoid unwarranted disparity. Finally, while mindful that the Court has directed letters of support be filed with initial

Sentencing Memorandum ([D.E. 6] (Standing Order), Mr. Gillespie appends, as Exhibit A to this response memorandum, three letters of support from Mr. Gillespie's extended family should the Court be inclined to accept and review them.

## II.     GUIDELINES DISPUTES

In resolving the guideline disputes at issue, the Court has the benefit of having presided over trial and thus is able to evaluate the evidence itself rather than the government's characterization of it. Consequently, Mr. Gillespie will refrain from rehashing the myriad assertions made in the government's Sentencing Memorandum in favor of simply highlighting the most salient issues[1] as to each:

- **Perjurious Testimony:** As an initial matter, Mr. Gillespie's Sentencing Memorandum cited *United States v. Montague*, 40 F.3d 1251, 1253 (D.C. Cir. 1994) for the proposition that U.S.S.G §3C1.1 required the government to prove perjurious testimony by a clear-and-convincing standard. Sentencing Memorandum [D.E. 80] at 8. Undersigned counsel subsequently learned from the government that the Court has previously ruled that the Sentencing Commission's 1997 amendment to §3C1.1 effectively overruled Montague and that a preponderance of evidence standard applies. Mr. Gillespie does not challenge this ruling.

But it does not matter because there is insufficient support for perjurious testimony under any standard. "[N]ot every accused who testifies at trial and is convicted will incur an enhanced sentence . . . for committing perjury." *United States v. Dunnigan*, 507 U.S. 87, 95-96 (1993). Instead, to prove the enhancement the government must show willfulness to obstruct as to a

---

[1] The government devotes a full nine pages of its 48-page-long Sentencing Memorandum to repeat its overview of the events of January 6, the same overview that appears in the Presentence Report as well as in virtually every filing about the case the government makes. Its overview, of course, consists of descriptions of events that Mr. Gillespie did not participate in and was unaware of. Most important, the overview does not assist the Court in the task of fashioning an individualized sentence required by 18 U.S.C. § 3553(a).

material matter. *Id.* When evaluating whether the government has met its burden, the Court must rule out discrepancies, if any, that are due to confusion, mistake, or faulty memory while being mindful of the fact that "testimony may be truthful, but the jury may nonetheless find the testimony insufficient to excuse criminal liability or prove lack of intent." *Id.*

In carrying out this task, the benefit to the Court of having tried the case is that the Court was (and is) in a superior position to consider the nuances and accuracy of Mr. Gillespie's testimony in real time, as well as whether discrepancies in his testimony, if any, were material. There is virtually no factual dispute – Mr. Gillespie admitted in detail all the factual circumstances the government needed to satisfy each of the elements of the counts of conviction and often more. As just one example, rather than obfuscate or minimize his controversial beliefs about the election, which would be prudent given the District of Columbia audience who would decide his guilt, he freely set forth his continuing belief that the election was fraudulent and that protest to publicize his view was required. Such brutal honesty is inconsistent with a willfulness to mislead the jury or the Court.

Given this backdrop, the government's efforts to cherry-pick, without context, minor matters and to spin and recharacterize evidence at trial are insufficient to support the enhancement. As argued in Mr. Gillespie's initial Sentencing Memorandum, D.E. 80 at 9-10, none of the purported bases for perjurious testimony is supported and consequently an enhancement for obstruction of justice is unwarranted.

- **Riot Shield as Dangerous Weapon:** The government's argument that Mr. Gillespie used the riot shield in a manner that rendered it a dangerous weapon likewise falls flat, largely for the reasons set forth in Mr. Gillespie's objections to the Presentence Report and in the initial Sentencing Memorandum, D.E. 80, at 5-7. Perhaps recognizing the weakness of its position, the

government resorts to characterizations, that Mr. Gillespie "rammed" and "charged" with the riot shield before later "raising" and "slamming" it near the officers. Government Sentencing Memorandum [D.E. 81] at 26-27. The video evidence, however, speaks for itself and belies the characterizations. In short, it conclusively demonstrates that Mr. Gillespie's ill-conceived and ill-defined two to three-second rush toward the officers while holding onto a riot shield does not merit the conclusion that it was used as a dangerous weapon. Consequently, it is insufficient to support the enhancement resulting cross-reference.

- **Physical Restraint:** The government's attempt to resurrect this enhancement abandoned by the Probation Department is likewise bootless. As an initial matter, the government fails to show that Mr. Gillespie's grabbing of Sergeant Riley's arm was somehow independent of the 111(a) count, which criminalizes the use of force to assault, resist, oppose, impede, intimidate, or interfere. To the extent Mr. Gillespie's grabbing of Sergeant Riley's arm continued physical restraint, it did not "add[] to the basic crime." *United States v. Wilson*, 198 F.3d 467, 472–73 (4th Cir. 1999) (quoting *United States v. Mikalajunas,* 936 F.2d 153, 156 (4th Cir.1989)). Regardless, using the government's framework from *United States v. Bell*, 947 F.3d 49, 56 (3d Cir. 2000), the conclusion that Mr. Gillespie's actions did not rise to the level of physical restraint as envisioned by the Sentencing Commission is patent. The video of the event is conclusive:

    o  Mr. Gillespie exerted no control over Sergeant Riley, whose place in the police line was unchanged despite the arm grab;

    o  Sergeant Riley quickly repelled Mr. Gillespie, showing a manifest alternative to compliance, *see Bell* at 61 (alternative to compliance manifest where victim twice attempted to thwart the robbery);

    o  Mr. Gillespie's "focus" on Sergeant Riley – if focus there was - was exceedingly transient, *see id.* (the length of time – as here, a few seconds - that transpired while the defendant grabbed the victim's neck and shoved him to the floor evidenced "no sustained focus" and thus weighed against conclusion of physical restraint);

- o The "restraint" was not accomplished by confinement within a space or by a barrier, *id.* at 60.

Considered in the framework of these factors, Mr. Gillespie's transitory action in grabbing Sergeant Riley's arm distinguishes it from the cases cited by the government where other sessions of the district court have found the enhancement supported. *See* Government's Sentencing Memorandum [D.E. 81] at 29 fn. 15. Therefore, the government's suggested enhancement for physical restraint pursuant to U.S.S.G. § 3A1.3 is unsupported and the Court must decline to impose it.

For the forgoing reasons, as well as those set forth in Mr. Gillespie's objections to the Presentence Report and his Sentencing Memorandum [D.E. 80], the disputed cross-reference and enhancements are unsupported and thus the properly calculated guideline sentencing range is 30-37 months.

III.    **UNWARRANTED SENTENCING DISPARITY**

The government's 87-month recommendation, which is based on the incorrectly calculated guideline range, puts Mr. Gillespie in rarefied company – in only 1.3% (six out of 433) of January 6 cases sentenced as of March 10, 2023, have judges seen fit to impose a sentence equal to, or longer, than that which the government urges for Mr. Gillespie. Close review of those cases uncovers conduct several orders of magnitude more serious and culpable than Mr. Gillespie's spur-of-the-moment decision to participate in the melee in the Lower West Terrace Tunnel:

- **U.S. v. Guy Reffitt, 1:21- CR- 00032 – DLF (sentenced to 87 months):** Reffitt's trial demonstrated that he was a member of Texas Three Percenters militia group and specifically targeted Speaker Pelosi and Majority Leader McConnell. He went to the Capitol armed with a .40 caliber handgun (but leaving his assembled AR-15 in his car), a tactical helmet, bulletproof armor, and three sets of flexicuffs. While at the Capitol, he rushed three officers and aided others in doing so.

- *U.S. v. Thomas Robertson*, 1:21-CR-00034-CRC (sentenced to 87 months): Robertson's trial demonstrated that he was a police officer in Virginia and traveled to the Capitol with a gas mask, rations, and a large wooden stick that could be used as a baton. While at the Capitol, he prevented officers from reinforcing the police line by using his stick as a police officer would (at "port arms"). He entered the Capitol with the first group of protesters, proceeding through the Crypt before eventually leaving on the command of police officers.

- *U.S. v. Thomas Webster*, 1:21-CR-00208-APM (sentenced to 120 months): Webster's trial demonstrated that Webster (a former Marine and 20-year veteran of the NYPD) traveled to the Capitol with a bulletproof vest, a small revolver that he could conceal inside a jacket, and rations. At the Capitol, he carried a metal flagpole with the US Marines flag on it, verbally assaulted a police officer, pushed against the bike rack line to try and break through, swung the flagpole with enough force to break it against the metal barricade, and wrestled with a police officer after tackling him to the ground, before making his way up to the inauguration stand and witnessing an officer being dragged into the mob from the Lower West Tunnel.

- *U.S. v. Kyle Young*, 1:21-CR-00291-ABJ (sentenced to 86 months): Young, through a plea, admitted to being in the Lower West Terrace tunnel with his minor son while armed with a stun gun that he gave to another rioter. In the tunnel, Young pointed a strobe light at the officers, jabbed a stick at them, and helped other rioters throw a large speaker at the officers. When he saw Officer Michael Fanone pulled into the mob, he and his son pushed through to get to him and beat Fanone while another rioter shocked him.

- *U.S. v. Albuquerque Head Cosper*, 1:21-CR-00291-ABJ (sentenced to 90 months): Head, through a plea, admitted to being in the Lower West Terrace tunnel. In the tunnel, Head wrapped his arm around the neck of Officer Fanone and, yelling "I got one!," pulled him into the crowd of rioters who beat, tased, and robbed him.

- *U.S. v. Julian Elie Khater*, 121-CR-00222-TFH (sentenced to 80 months): Khater, through a plea, admitted to bringing two cans of bear spray and two cans of pepper spray to the Capitol. The bear spray was unused, and one of the cans of pepper spray was used to assault and disable three police officers, including Officer Brian Sicknick. Khater then proceeded to climb the scaffolding of the inaugural podium before leaving the Capitol grounds.

Each of these cases, with the possible exception of *Head*, featured substantial planning and preparation for violent conduct in advance of the riot, and all involved levels of sustained and directed violence once the defendants entered the Capitol grounds. All, except for *Reffitt*, featured substantial bodily injury to officers as a direct result of the defendant's actions.

Not so with Mr. Gillespie. It is undisputed that, unlike most January 6 defendants sentenced to substantial prison time, Gillespie engaged in no planning for an assault on the Capitol, let alone violence. It is likewise undisputed that he brought no weapons or tactical gear to the scene. He had no prior experience, training, or special skills that enabled him to be especially effective in combating officers. And Mr. Gillespie injured no one; indeed, it was he who bore the brunt of injury because of his misguided decision to enter the tunnel and engage with the officers.

In addition to the total lack of features justifying a "worst of the worst" sentence, Mr. Gillespie's conduct lacks other aggravating features common to January 6 cases that might support a sentence above the 30-37 months range. As some examples:

- He did not post exhortations to, or otherwise conspire with, others to go to the Capitol in advance of the riot;

- Arriving late to the grounds, he did not lead, encourage, or rally the crowds to breach into the Capitol building and other restricted grounds;

- Afterwards, he did not post about his participation in the January 6 events on social media or otherwise extoll the events of January 6 and laud his participation in them.

- He did not attempt to thwart the investigation of him by destroying evidence and he has been exemplary while on pretrial release.

All these factors point to a markedly different intent than the vast majority of those sentenced to any imprisonment for January 6 crimes. The sentence imposed by this Court should acknowledge these features to avoid unwarranted sentencing disparity.

An important datapoint in balancing features of Mr. Gillespie's conduct while assessing sentencing disparity is *United States v. Michael Mazza*, Criminal No. 1:21-cr-00736-JEB. Mazza brought two guns, one loaded with hollow point bullets, to the Ellipse and then to the Capitol. *Id.* D.E. 25 (Statement of Offense). He made his way to the Lower West Terrace, losing one of the

guns along the way, where he joined with others to push through the officers defending the entrance. *Id.* Reaching the entrance – a task Mr. Gillespie was unable to accomplish before giving up an hour later - Mazza held open one of the doors to the Capitol and so allowed other rioters to attack officers with flag poles, batons, sticks and stolen law enforcement shields. *Id.* He then stole a baton from an officer's hand and assaulted him on the arm with it. *Id.* After continuing to strike at the officers with the stolen baton, Mazza continued his efforts to get past law enforcement officers and yelled, "This is our f---- house! We own this house!" *Id.* He then participated in "heave-ho" efforts to apply significant physical force and pressure on the officers to remove them from the doorway. *Id.* Two days later Mazza filed a false police report in which he claimed to have lost his gun at an Ohio casino. *Id.* He kept the baton stolen from the officer guarding the door when he traveled back to his home.

At first charged, like Mr. Gillespie, with a variety of offenses including assault and civil disorder, Mazza was eventually permitted to plead guilty to a single count of aggravated assault in violation of 18 U.S.C. § 111(b), an offense more serious than the § 111(a) charge the jury convicted Mr. Gillespie of. After considering the circumstances of the offense Judge Boasberg sentenced Mazza to sixty (60) months imprisonment.

As reflected by the underlying facts and his conviction of aggravated assault, Mazza's offense conduct was many orders of magnitude graver and more culpable than that engaged in by Mr. Gillespie. Mazza's extensive preplanning for violence – completely lacking in Mr. Gillespie's conduct - was evidenced by his decision to take two deadly weapons to the riot. He encouraged and coordinated with others to do violence and property damage, which Mr. Gillespie did not. He stole (and kept) a police baton that he used to assault police officers. And he took proactive post-riot steps to hide his participation, which Mr. Gillespie did not, fully

Case 1:22-cr-00060-BAH   Document 83   Filed 04/07/23   Page 9 of 10

understanding the gravity and seriousness of his conduct in bringing (and losing) weapons to the U.S. Capitol.

To be sure, Mazza pled guilty rather than, as Mr. Gillespie did, go to trial. On the other hand, the failure to accept responsibility cannot justify a sentence for Mr. Gillespie like that imposed in Mazza's case - where Mazza's underlying conduct is undeniably far more egregious. Consequently, section 3553(a)'s direction to avoid unwarranted disparity demands a sentence that properly recognizes the marked difference in culpability. The recommended sentence of thirty (30) months is substantial punishment for a 62-year-old man with no criminal record, reflects Mr. Gillespie's actual conduct, and avoids the specter of unwarranted sentencing disparity.

In sum, as argued in depth in Mr. Gillespie's Sentencing Memorandum [D.E. 80], as well as the dispositions cited above, the properly calculated guideline range of 30-37 months far better fits Mr. Gillespie's actual conduct and a sentence of 30 months accurately balances the section 3553(a) factors in his case. The Court should therefore impose it.

## CONCLUSION

For the foregoing reasons, as well those set forth in his initial Sentencing Memorandum, Mr. Gillespie respectfully requests that the Court sentence him to a term of imprisonment of thirty (30) months, a sentence with the sentencing guidelines range as properly calculated, with two years of supervised release with appropriate conditions to follow. The Court should issue a restitution order commensurate with that levied in similar cases. The Court should decline to impose a fine.

VINCENT GILLESPIE
By his attorneys,

*/s/ Timothy G. Watkins*
Timothy G. Watkins
Forest O'Neill-Greenberg
Aziza Hawthorne
Federal Defender Office
51 Sleeper Street, Fifth Floor
Boston, MA 02210
617-223-8061

## CERTIFICATE OF SERVICE

I, Timothy G. Watkins, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on April 7, 2023.

*/s/ Timothy G. Watkins*
Timothy G. Watkins